IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MANUEL VON RIBBECK, | ) | |
| | ) | Case No. 19 C 1205 |
| Plaintiff, | ) | |
| | ) | District Court Judge Pacold[1] |
| v. | ) | |
| | ) | Magistrate Judge Schenkier |
| CHRISTINE NEGRONI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINON AND ORDER[2]

Plaintiff, Manuel Von Ribbeck, filed this defamation and interference with prospective contractual relations lawsuit against defendant, Christine Negroni, in the Circuit Court of Cook County, Illinois. The case was subsequently removed to federal court (doc. # 1). After plaintiff filed a second amended complaint ("SAC") (doc. # 24), defendant moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), arguing that no general jurisdiction or specific jurisdiction exists over her and that the SAC fails to state a claim on which relief may be granted (doc. ## 29, 34). Defendant submitted her affidavit in support of the motion to dismiss based on lack of personal jurisdiction (doc. # 34-5: Negroni Aff.).

Prior to responding to the motion to dismiss, plaintiff sought leave of court to conduct jurisdictional discovery. After a meet and confer between the parties, Judge Blakey permitted jurisdictional discovery in the form of a two-hour deposition of Ms. Negroni (doc. # 35: Order 5/21/19; doc. # 40: Tr. 5/21/19). Ms. Negroni's deposition took place on July 11, 2019 (doc. # 43-2: Negroni Dep.). At a status hearing before Judge Blakey on July 17, 2019, the parties informed

---

[1] On August 23, 2019, this matter was reassigned from District Judge Blakey to District Judge Pacold (doc. # 61).

[2] On October 17, 2019, this matter was referred to this Court for all discovery motions (doc. # 68).

the Court that Ms. Negroni's deposition took place, that there were objections and instructions not to answer at the deposition, and that plaintiff served document requests seeking what he asserted was jurisdictional discovery (doc. # 45: Tr. 7/17/19). The district court admonished the parties to meet and confer regarding the "discovery requests" and stated that if they were related to the jurisdictional issue, the district court did not "have any problem with them" (*Id.*). The district court also set a briefing schedule on any motion to compel deposition answers or motion to quash discovery requests in the event the parties could not work out their disputes (doc. # 41: Order 7/17/19).

The subsequent meet and confer did not resolve the parties' discovery disputes. Pending before this Court are two discovery motions: (1) plaintiff's motion to compel answers to deposition questions and memorandum in support (doc. # 51: Motion to Compel; doc. # 53: Memorandum in support of Motion to Compel ("Pl. Memo.")) and (2) defendant's motion to quash the notice to produce and memorandum in support (doc. # 42: Motion to Quash; doc. # 43: Memorandum in support of Motion to Quash ("Def. Memo.")). Defendant filed a response to the motion to compel (doc. # 57: Response to Motion to Compel ("Def. Resp.")) and plaintiff filed a response to the motion to quash (doc. #55: Response to Motion to Quash ("Pl. Resp.")). For the following reasons we grant in part and deny in part the motion to compel and we grant without prejudice the motion to quash.

### I.

We drew the following factual background from the SAC and Ms. Negroni's affidavit in support of her motion to dismiss. Mr. von Ribbeck is an attorney who is licensed to practice law in Illinois and concentrates his law practice in aviation litigation (SAC ¶¶ 2, 3). Mr. von Ribbeck currently represents families who lost relatives in the Lion Air Flight 610 crash that occurred in

Indonesia on October 29, 2018 (*Id.* ¶ 4). Ms. Negroni is a blogger who specializes in aviation and travel writing (SAC ¶¶ 5, 6). At issue in this case is a blog post entitled "Lion Air Lawyer Accused of Sexual Assault in 2010" (the "Post") that Ms. Negroni published on December 17, 2018 (doc. # 24-1: Ex. 1 to SAC). Ms. Negroni is a Connecticut resident and has lived and worked there since 1993 (doc. # 34-5: Negroni Aff. ¶ 3).

According to the assertions in her affidavit, Ms. Negroni does not own or rent real estate in Illinois and she has not resided in Illinois since 1993 (Negroni Aff. ¶ 4). Since that time, she has only occasionally passed through O'Hare International Airport en route to other destinations, and she spent one three-day family vacation in Illinois (*Id.* ¶ 5). Ms. Negroni states that she does not conduct business in Illinois (Negroni Aff. ¶ 6). Rather, she conducts her research and writing in Connecticut, including the calling and emailing of sources for the Post (*Id.* ¶ 7). Ms. Negroni does not specifically market her blog, and did not specifically market the Post, in Illinois and does not target Illinois residents (*Id.* ¶ 9). She tweeted regarding the Post on December 17 and 18, 2018 and included hashtags for Chicago and Jason Meisner, a Chicago Tribune reporter, in those tweets because a Lion Air case was filed in Chicago and Mr. Meisner was "working" the story (*Id.* ¶¶ 10, 11).

## II.

Ms. Negroni was deposed on July 11, 2019 in Connecticut and was represented by counsel. After certain questions were asked of Ms. Negroni, her attorney "lodge[d] a continuing objection to questions that go to general jurisdiction," that were not "suit related" and invoked the Connecticut Reporter's Privilege[3] thus instructing Ms. Negroni not to answer numerous questions

---

[3] In the deposition, the defendant's objection simply cites to the "reporter's privilege;" however, in her response to the motion to compel, Ms. Negroni clarifies she is arguing that Connecticut's reporter's privilege applies, not Illinois' reporter's privilege (Def. Resp. at 7-8).

3

based on one or more of those objections (doc. # 43-2: Negroni Dep. at 9).[4] After that deposition, plaintiff served a document request on defendant seeking information he claims is relevant to personal jurisdiction.

### III.

Plaintiff's motion to compel argues that Ms. Negroni was required to answer those questions she refused to answer, claiming they address her contacts with the state of Illinois. Defendant claims the questions were improper because they concerned general jurisdiction and the deposition was limited to questions regarding specific jurisdiction, were not suit-related, or were protected pursuant to the reporter's privilege. Defendant's overlapping motion to quash likewise places in issue whether plaintiff is entitled to discovery regarding a theory of general jurisdiction and whether certain information he seeks is privileged. We address each motion in turn, starting with plaintiff's motion to compel.

### IV.

When addressing a motion to dismiss under Rule 12(b)(2), a court has both the discretion to allow jurisdictional discovery and the authority to prescribe its limits. *Duracell U.S. Operations, Inc. v. JRS Ventures, Inc.*, No. 17 C 3166, 2018 WL 704686, *1 (N.D. Ill. Feb. 5, 2018) (collecting cases). An instruction not to answer a deposition question is governed by Federal Rule Civil Procedure 30(c)(2): "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." A lawyer may not instruct a witness not to answer, and a witness may not decline to answer a question, on any other basis. *Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007).

---

[4] We refer to the docket number and the page that correlates to the docket number, not the actual deposition page number. For example, here we refer to page 9 of docket number 43-2, which encompasses pages 29-32 of Ms. Negroni's deposition transcript.

4

Personal jurisdiction can be established by demonstrating either general jurisdiction or specific jurisdiction. General jurisdiction exists when a party's contact with the forum state is "continuous and systematic." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). "Specific jurisdiction requires a defendant's contacts with the forum State to be directly related to the conduct pertaining to the claims asserted" and the focus of the inquiry is on "the relationship among the defendant, the forum, and the litigation." *Id.* (citations omitted). Unless Ms. Negroni can show that the district judge barred any inquiry into general jurisdiction, she was required to answer questions at her deposition on that theory of jurisdiction. Defendant has failed to show that the district judge limited jurisdictional discovery to an inquiry into specific jurisdiction.

At the May 21st status hearing, the district judge permitted "jurisdictional discovery" in the form of a two-hour deposition of Ms. Negroni (doc. # 35: Order 5/21/19; doc. # 40: Tr. 5/21/19 at 2, 3, 6, 7, 8). At no point during the status hearing did either party or the district judge utter the words general or specific jurisdiction; rather, all that was discussed was "jurisdictional discovery." Additionally, in explaining his preference for a deposition instead of interrogatories to conduct the jurisdictional discovery at issue, plaintiff argued that a deposition would be more efficient to ask Ms. Negroni about the "stuff" she's done for the Chicago Tribune, her not making substantial income, and if she really "talks to people at Boeing on the phone" (Tr. 5/21/19 at 5). These types of questions can fall under the "general" category of jurisdiction and are some of the same topics to which defendant objected at the deposition.

Moreover, defendant did not seek a protective order to limit her deposition to topics related solely to specific jurisdiction, which was a course she could have pursued under Rule 30(c)(2). Rather, defendant now argues that plaintiff waived any assertion of general jurisdiction because plaintiff did not allege it in the SAC. Defendant relies on *RAR, Inc. v. Turner Diesel, Ltd.*, 107

F.3d 1272, 1277 (7th Cir. 1997), for its finding that because the plaintiff never alleged defendant had "systematic contacts with Illinois," the plaintiff waived any general jurisdiction argument (Def. Resp. at 2, 6).

We find no waiver here. "A plaintiff need not specifically allege facts supporting jurisdiction in her complaint." *Winston v. Martinair, Inc.*, No. 06 C 5130, 2007 WL 684113, *3 (N.D. Ill. Feb. 26, 2007). Plaintiff's SAC alleges in part that jurisdiction over Ms. Negroni is proper in Illinois because Ms. Negroni "otherwise engage[ed] in business in this State" (SAC ¶ 25). The SAC also mentions the Chicago Tribune article Ms. Negroni authored in April 2017 and her work with other journalists in Chicago investigating plaintiff (SAC ¶¶ 21-23).

Defendant's motion to dismiss discussed both general and specific jurisdiction. Specifically, Ms. Negroni argued that she is not subject to the general jurisdiction of the Court because she does not have "continuous and systematic" contact with Illinois (doc. # 34: Memo. In Support of Motion to Dismiss at 8). Her affidavit in support also mentioned a freelance article she wrote two years ago for the Chicago Tribune, her three-day family visit to Illinois three years ago, and certain hashtags for Chicago and Mr. Meisner that she used in her tweets on December 17 and 18, 2018 about the Post (Negroni Aff. ¶¶ 4, 5, 10, 11). "[W]here a party injects an issue into a case, there can be no legitimate objection to the opponent being able to take appropriate discovery to ascertain the truth of the opponent's allegations." *Duracell U.S. Operations*, 2018 WL 704686, *4. Plaintiff is entitled discovery to test defendant's denial of continuous and systematic contacts in Illinois.

Thus, we grant plaintiff's motion to compel insofar as defendant must answer the questions that she was instructed not to answer based on a purported limit on jurisdictional discovery to

6

specific jurisdiction. To the extent any of these objections also raise the reporter's privilege, that will be addressed next along with defendant's motion to quash.

### V.

In her motion to quash plaintiff's request for production of documents, defendant argues that: (1) the district court's May 21st Order only granted leave to take a two-hour deposition, and plaintiff improperly served the document requests without first seeking leave of court; (2) plaintiff is not entitled to discovery relevant to general jurisdiction; and (3) the discovery sought violates Connecticut's statutory reporter's privilege. For the reasons stated above, we reject the argument that plaintiff is not entitled to seek discovery relevant to general jurisdiction. We address defendant's other two arguments below.

### A.

Defendant argues that the document requests should be denied because in serving them, plaintiff exceeded the scope of discovery permitted by the district court's May 21st Order, which authorized a two-hour deposition of Ms. Negroni. While defendant's description of the May 21, 2019 Order is correct, she ignores the discussion at the July 17, 2019 status hearing regarding the 32 requests to produce served by plaintiff after the deposition of Ms. Negroni. At that hearing, the district judge stated "[y]ou need to meet and confer regarding the discovery requests. If they're related to the jurisdictional issue, the Court doesn't have any problem with them" (doc. # 45: Tr. 7/17/19 at 5-6). The district judge also set a briefing schedule for any motion to quash discovery requests seeking information beyond that which is relevant to personal jurisdiction (*Id.* at 6). We conclude that the district judge's statement cannot be fairly read as limiting plaintiff to oral discovery and foreclosing any written discovery directed to personal jurisdiction. Defendant's motion to quash plaintiff's production requests on this basis is denied.

7

**B.**

Defendant next argues that certain of the document requests and deposition questions "invade her reporter's privilege," and that we should apply Connecticut's statutory reporter's privilege to this matter pursuant to the doctrine of dépecage because Connecticut's privilege is purportedly "broader than in Illinois" (Def. Memo. at 7; Def. Resp. at 7-8).[5] Plaintiff insists that Illinois law applies, but he offers no analysis as to why this is so; instead, he merely quotes the Restatement (Second) of Conflict of Laws (Pl. Resp. at 8).

Both Illinois and Connecticut have enacted what are generally known as shield laws – laws recognizing a reporter's privilege. 735 ILCS 5/8-901, *et seq.*; Conn. Gen. Stat. § 52-146t. In Illinois, "[n]o court may compel any person to disclose the source of any information obtained by a reporter except as provided in Part 9 of Article VIII of this Act." 735 ILCS 5/8-901. A source is defined as "the person or means from or through which the news or information was obtained." 735 ILCS 5/8-902(c). A reporter in Illinois is "any person regularly engaged in the business of collecting, writing or editing news for publication through a news medium ... and includes any person who was a reporter at the time the information sought was procured or obtained." 735 ILCS 5/8-902(a). News medium is defined in part as "any newspaper or other periodical issued at regular intervals whether in print or electronic format and having a general circulation; a news service whether in print or electronic format." 735 ILCS 5/8-902(b).

Connecticut's statute provides "protection from compelled disclosure of information obtained by news media," and defines news media as "[a]ny newspaper, magazine or other periodical, ... that disseminates information to the public, whether by print, broadcast, ...

---

[5] The doctrine of dépecage is followed by Illinois and "refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis." *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 801 (N.D. Ill. 2011) (citation omitted).

8

electronic or any other means or medium." Conn. Gen. Stat. § 52-146t(a)(2). Connecticut's reporter privilege extends to "any information obtained or received, whether or not in confidence, by the news media in its capacity in gathering, receiving or processing information for potential communication to the public, or the identity of the source of any such information." Conn. Gen. Stat. § 52-146t(b).

It appears that there is a true conflict between Connecticut and Illinois statutes concerning reporter's privilege – but in a strange twist, the Illinois law that plaintiff asks us to apply is actually more favorable to defendant than Connecticut shield law that defendant asks us to apply. Defendant argues that she falls under the umbrella of Connecticut's reporter privilege's "news media" definition because she is a "blogger" who disseminates information to the public on a routine basis by posting her *Flying Lessons* blog at least once a month for the past decade (Def. Memo. at 8). However, what defendant fails to recognize is that under the Connecticut statute "'[n]ews media' does not include internet blog sites." *State v. Buhl*, No. S20NCR10127478S, 2012 WL 4902683, *7 fn 5 (Conn. Super. Ct. Sept. 25, 2012) (reversed in part and affirmed in part on other grounds) (citing 49 S.Proc., Pt. 11, 2006 Sess., p. 3282, remarks of Senator McDonald). Therefore, as a self-proclaimed "blogger," Ms. Negroni would not be protected as a member of the "news media" in Connecticut for purposes of her Post.

By contrast, if Illinois law applies to this issue, a blogger like Ms. Negroni can be protected by Illinois' reporter's privilege. While technology often outpaces the law, at least one Illinois court has extended the reporter's privilege to a blogger. *Johns-Byrne Co. v. Technobuffalo LLC*, No. 2011 L 009161, 2012 WL 7746968, *4 (Ill. Cir. Ct. July 13, 2012) (Mot. Recons. Granted); *see also Simon v. Northwestern Univ.*, No. 15 C 1433, 2017 WL 1197097, *4 (N.D. Ill. Mar. 31, 2017) (recognizing that *Johns-Byrne* has interpreted "reporter" to include certain bloggers but not

reaching this issue). We follow the rationale set out in *Johns-Byrne*, that in the "absence of a clear, legislative intent" to the contrary, blogs containing content acquired from actual news gathering activity – the gathering and dissemination of information to the public – "cannot be excluded as a 'news medium' within the meaning of the Act." 2012 WL 7746968, *4.

Thus, because there exists a true conflict between the Connecticut and Illinois shield laws, to determine which law applies in this diversity case, we apply the choice-of-law rules of Illinois, the state in which this Court sits. *Malone v. Corr. Corp. of Am.*, 553 F.3d 540, 543 (7th Cir. 2009). Illinois courts apply the "most significant contacts" test in resolving conflicts of law. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). To determine which "state has the strongest relationship with the occurrence and the parties, the Court looks to four factors: (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 801 (N.D. Ill. 2011) (internal quotations and citations omitted). We then must weigh the contacts in light of the general principles outlined in the Restatement (Second) of Conflict of Laws, section 6. *Id.* In applying these factors, we are mindful that in "defamation cases, the plaintiff's home state often has the most 'significant relationship' because that location is where the plaintiff suffers the most reputational harm." *Board of Forensic Doc. Exam'rs, Inc. v. American Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019). Accordingly, the Seventh Circuit has recognized that in a tort matter such as this case asserting claims of defamation and tortious interference, "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *See also Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006) (citations omitted).

10

Here, Mr. von Ribbeck alleges that he was injured in Illinois. The alleged injury-causing conduct (the writing and dissemination of the blog Post) occurred in Connecticut. Mr. von Ribbeck is domiciled in Illinois while Ms. Negroni is domiciled in Connecticut. The parties' relationship does not have a center as no interaction between the two is alleged. The weight of these factors favor application of Illinois law; defendant has failed to show that Connecticut's relationship with this case is strong enough to rebut the presumption in favor of applying the law of Illinois, the place of the alleged injury. *See Chi,* 787 F. Supp. 2d at 802.

While the Restatement identifies certain situations where place of injury is less important – where the place of injury is fortuitous, or the defendant had little or no reason to foresee the act would result in injury in the particular state – this is not one of those situations. *See Chi,* 787 F. Supp. 2d at 802. Defendant claims she believed plaintiff no longer lived in Illinois; however, she included hashtags for Chicago and Mr. Meisner in her December 17 and 18, 2018 tweets about the Post (Negroni Aff. ¶¶ 9-10). Ms. Negroni also averred that she included the "#chicago" in those tweets because "at least one Lion Air case had already been filed in Chicago, and [she] believed others would likely be filed in Chicago" (*Id.* ¶ 11). Similarly, Ms. Negroni stated that she included the hashtag for Mr. Meisner as a "newspaper reporter working the story" (*Id.* ¶ 12). In these circumstances, she could reasonably foresee that the Post could result in the alleged injury to plainitff in Illinois. We agree with plaintiff that Illinois law should be applied with respect to the reporter's privilege.

**1.**

We next consider whether Ms. Negroni is a "reporter" and whether her blog constitutes a "news medium" under Illinois' reporter's privilege statute. 735 ILCS 5/8-902(a) and (b). If so,

then in any deposition questioning or document requests seeking disclosure of the "source" of her work as a reporter, the privilege would apply unless it has been waived.

A reporter is "any person regularly engaged in the business of collecting, writing or editing news for publication through a news medium." 735 ILCS 5/8-902(a). Without contradiction, Ms. Negroni generally describes herself as a writer, journalist, broadcaster and speaker (Negroni Dep. at 16) who "writes about aviation news and events around the world" (Negroni Aff. ¶ 9). We therefore find that she is a "reporter" under Illinois' shield law. Next, as discussed above and in accordance with *Johns-Byrne Co.*, we find that Ms. Negroni's blog constitutes a "news medium" that is "issued at regular intervals" in "electronic format." 735 ILCS 5/8-902(b); *Johns-Byrne Co.*, No. 2011 L 009161, 2012 WL 7746968, *4. Therefore, Ms. Negroni, the Post and her blog *Flying Lessons* are covered by Illinois' reporter's privilege for purposes of the motions before us.

Next, we consider whether there has been a divestiture of the privilege pursuant to Section 8-907(2) of the statute. The Act not only protects the identities of sources but also the "means from or through which the news or information was obtained." *Kelley v. Lempesis*, No. 13 C 4922, 2015 WL 4910952, *2 (N.D. Ill. Aug. 17, 2015) quoting 735 ILCS 5/8-902(c). "'[A] reporter's resource materials' are equally as deserving of protection as the identities of 'confidential informants.'" *Kelley*, 2015 WL 4910952, *2, 3 (holding video outtakes qualify for protection under the reporter's privilege act). That said, Section 8-907(2) empowers a court divest a reporter of the privilege if "all other available sources of information have been exhausted and ... in libel or slander cases, the plaintiff's need for disclosure of the information sought outweighs the public interest in protecting the confidentiality of sources of information used by a reporter as part of the news gathering process." 735 ILCS 5/8-907(2). Here, plaintiff does not allege, much less show, that he has exhausted all other available sources of information, and that his need for disclosure on the

12

question of personal jurisdiction "outweighs the public interest in protecting the confidentiality of sources of information used by a reporter as part of the news gathering process." 735 ILCS 5/8-907. We therefore find no basis at this time to find a divestiture of the privilege.[6]

Plaintiff argues, without reference to Section 8-907, that defendant has waived the reporter's privilege by putting her "Illinois work contacts at issue" (Pl. Resp. at 9). While Section 8-907 states that "divestiture of the privilege ... shall be granted *only*" under the limited circumstances described above, 735 ILCS 5/8-907 (emphasis added), the statute is silent on the question of whether a reporter may waive the privilege by her conduct and the case law addressing the question is sparse. In *People ex rel. Scott v. Silverstein*, 412 N.E.2d 692, 696 (Ill. App. 1980), *rev'd on other grounds*, 429 N.E.2d 483 (1981), the court explained that waiver should be narrowly applied: "to find that [newspaper reporter] waived his privilege, simply because he revealed some of his sources to the Special Assistant Attorney General, would defeat the express purpose of this legislation." 412 N.E.2d at 696. *See also Simon v. Northwestern Univ.*, 321 F.R.D. 328, 332 (N.D. Ill. 2017) (stating that "the only guidance the *Silverstein* court provided on what *does* constitute waiver is the statement that a reporter arguably waives the privilege when she acts outside of the scope of a reporter and assumes the duties of an investigator."). Giving a narrow scope to waiver is consistent with the underlying purpose of the Illinois statute: to advance "a paramount public interest in the maintenance of a vigorous, aggressive and independent press ..." *Silverstein*, 412 N.E. 2d at 693.

In this case, Ms. Negroni attested that she "conduct[s] her research and writing in Connecticut," she does "not conduct business in the State of Illinois," she is engaged in "calling and emailing sources for the Post from Connecticut," she does "not specifically target Illinois

---

[6] We express no view as to whether – whether in this district or elsewhere – there would be a basis to divest Ms. Negroni of the Illinois privilege in connection with the litigation on the merits of plaintiff's tort claims.

13

residents with the blog (or the Post)" and her explanation for including hashtags for Chicago and Mr. Meisner in her tweets (Negroni Aff. ¶¶ 6, 7, 9-12). Therefore, while Ms. Negroni may have put "at issue" whether she engaged in communications as a "reporter" in Illinois, she did not put "at issue" the sources or information she obtained in those communications. Thus, the privilege was not waived.[7]

### C.

Having found that the Illinois reporter's privilege applies and that it has not been divested or waived, we consider in turn the request by plaintiff to compel answers to certain deposition questions and defendant's motion to quash the document requests.

### 1.

We begin with the instructions not to answer at the deposition. We consider four categories of questions that are in dispute.

*First*, plaintiff seeks to compel Ms. Negroni to disclose whether she spoke to, communicated with, or physically visited representatives from such entities as United Airlines, Boeing or anyone else in Illinois (Pl. Memo. at 9-10). Plaintiff states that he is not seeking the "disclosure of any particular information, the identity of a source or the content of a communication," but only seeks information that would show "Ms. Negroni's contacts with Illinois" (*Id.* at 11). We agree that answers to these general questions do not invade the privilege.

---

[7] In *Pinkard v. Johnson*, 118 F.R.D. 517, 523 (M.D. Ala. 1987), the court found that the reporter (a non- party) voluntarily submitted to a taped interview concerning the conversation he had with the defendant, and through this action, the reporter waived his qualified reporter privilege with regard to that specific conversation. "A reporter is not free to give a sworn statement to a litigant, and later invoke the qualified reporter privilege to keep this information from the Court." *Pinkard*, 118 F.R.D. at 523. The *Pinkard* court, however, limited its finding of waiver "only as to matters relating to the conversation" the reporter had with the defendant during a limited time frame. *Id.* Therefore, the parties were entitled to depose the reporter about the substance of the conversation about which he submitted the signed affidavit. *Id.* In doing so, the *Pinkard* court rejected defendants' request to license a "fishing expedition" into the records, notes, and mental processes of the reporter. *Id.* at 522. *Pinkard* provides no sound basis for the scope of waiver plaintiff seeks.

14

Therefore, Ms. Negroni must answer general questions concerning whether she has had contacts with persons or companies in Illinois, but may decline to disclose the identity of any source(s) who may have provided her with the information or the content of that information.[8]

*Second*, plaintiff asks us to order defendant to answer whether she received payment for "subjects written on her blog" (Pl. Memo. at 11). This question does not seek privileged information, and is relevant to Ms. Negroni's business contacts with Illinois. Plaintiff seeks to compel Ms. Negroni to answer questions concerning the "payment arrangements" for the Chicago Tribune article she wrote that is referenced in her affidavit (*Id.*). Ms. Negroni already admitted that she was paid for the Chicago Tribune article; thus, defendant can testify further concerning the billing and payment arrangements for that article.

*Third*, plaintiff seeks answers to questions concerning whether Ms. Negroni accessed the Illinois ARDC website for purposes of writing about Monica Kelly, the sister of Mr. von Ribbeck (Pl. Memo. at 12; Negroni Dep. at 23, 25). We note that at other portions in her deposition, Ms. Negroni freely admitted to visiting the ARDC website regarding her writing about Ms. Kelly (Negroni Dep. at 24, 29).[9] In addition, Ms. Negroni freely disclosed that she accessed government websites as part of her research as a blogger (Negroni Dep. at 20). Ms. Negroni cannot selectively assert that whether she accessed a particular website is privileged in one instance when she

---

[8] Plaintiff argues that the privilege does not apply with respect to sources to whom Ms. Negroni sent communications (Pl. Memo. at 11). We do not read the privilege as that limited, as plaintiff's position fails to account for the natural back-and-forth between a reporter and a potential source of information. Ms. Negroni must testify as to whether she had communications with Illinois based individuals, but not the identity of the individual(s) or the content discussed.

[9] At page 86 of the deposition, defendant questioned Ms. Negroni if she had visited the ARDC website concerning Ms. Kelly (Negroni Dep. at 23). At page 94 of the deposition, defendant questioned Ms. Negroni if she went on the ARDC website to "check on" Ms. Kelly in 2017 (*Id.* at 25). At both instances, defendant's counsel objected as to scope and instructed Ms. Negroni not to answer. However, at pages 91 and 110-11, Ms. Negroni admitted that she visited the ARDC website to investigate Ms. Kelly in both 2017 and 2018 (*Id.* at 24, 29).

15

revealed her access in another. Therefore, to the extent the questions regarding Ms. Kelly and defendant's access of the ARDC website were not answered, Ms. Negroni shall answer them.

*Fourth*, plaintiff seeks to compel Ms. Negroni to identify the lawyers located in Chicago with whom defendant had spoken about aviation accidents (Pl. Memo. at 12). Ms. Negroni admitted she had spoken with lawyers in Illinois in connection with her work over the last five years, but now plaintiff wants the names of those attorneys as well (*Id.*). Plaintiff also asked defendant if she had spoken to two specific attorneys and anyone from a specific law firm (*Id.*). Defendant refused to answer citing the reporter's privilege (*Id.*). As we explained above, disclosure of the identity of specific lawyers or sources would reveal Ms. Negroni's sources. Plaintiff can ask if she communicated with any Illinois attorneys, but under the Illinois reporter's privilege Ms. Negroni may decline to disclose their identity or the content of what information she may have obtained from them.

**2.**

We turn to defendant's motion to quash the request for production based on privilege. Defendant contends it is "plainly obvious that the information called for in virtually every document request invades the reporter's privilege" (Def. Memo. at 8). We could order Ms. Negroni to answer the requests to produce and make any objections she deems proper to specific requests. However, plaintiff stated that he only served the document requests because of the failure to obtain information at the deposition (Def. Resp. at 2). In these circumstances, we conclude the better course of action is to grant the motion to quash without prejudice, allow for the parties to complete the deposition consistent with this opinion, and for plaintiff to then revisit the need for the requests for production in light of this opinion on the scope of privilege – mindful that he may not at this time seek discovery as to the content or source of communications.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel (doc. #51) is granted in part and denied in part and defendant's motion to quash (doc. #42) is granted without prejudice. To sum up, the jurisdictional discovery is not limited to questions of specific jurisdiction, but rather extends to general jurisdiction as well. Illinois law controls the question of privilege here, and thus the Illinois' reporter's privilege is applicable to Ms. Negroni.

The reconvened deposition of Ms. Negroni is to be completed by January 10, 2020, may be taken remotely, is limited to one hour in length and is limited to those areas of questioning we have allowed with reasonable follow-up. Plaintiff is directed to serve requests to produce, if any, within 14 days of the conclusion of Ms. Negroni's reconvened deposition. This matter is set for status on January 29, 2020 at 9:00 a.m.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED: December 18, 2019**